UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DAWN K., )<br>)<br>       **Plaintiff** )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, )<br>*Acting Commissioner of Social Security*,[1] )<br>)<br>       **Defendant** ) | No. 2:20-cv-00245-GZS |

**REPORT AND RECOMMENDED DECISION**[2]

This Social Security Disability (SSD) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable of performing past relevant work as a retail sales clerk and a receptionist and, in the alternative, other jobs existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ failed to recognize hyperacusis/misophonia and insomnia as severe medically determinable impairments, thereby omitting any resulting functional limitations, and erred in assessing the functional limitations attributable to two of the impairments she did deem severe, migraine headaches and carpel tunnel syndrome (CTS). *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 15) at 3-18.[3] I agree that the ALJ's handling of the plaintiff's

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[3] The plaintiff also complained in her statement of errors that the ALJ failed to recognize fibromyalgia as a medically determinable impairment, *see* Statement of Errors at 9-10; however, during oral argument, her counsel withdrew that point.

1

CTS warrants remand and, on that basis, recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent herewith. I need not and do not reach the plaintiff's remaining points of error.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2020, Finding 1, Record at 17; that she had the severe impairments of obesity, CTS, hyperlipidemia, bursitis in the hip, plantar fasciitis, headaches, and pseudotumor cerebri, Finding 3, *id.*; that she had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she could occasionally climb ramps and stairs, never climb ladders, ropes, and scaffolds, occasionally balance, stoop, kneel, crouch, and crawl, frequently handle with her bilateral hands, and needed to avoid concentrated exposure to noise and to hazards such as heavy machinery, moving mechanical parts, and unprotected heights, Finding 5, *id.* at 19; that she was capable of performing past relevant work as a retail sales clerk and a receptionist, which did not require the performance of work-related activities precluded by her RFC, Finding 6, *id.* at 26; that, in the alternative, considering her age (33 years old, defined as a younger individual, on her alleged disability onset date, July 15, 2015), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, *id.* at 27-28; and that she, therefore, had not been disabled from July 15, 2015, her alleged onset date of disability, through the date of the decision, June 21, 2019, Finding 11, *id.* at 28. The Appeals Council declined to review the decision, *id.* at 2-5, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 and, in the alternative, Step 5 of the sequential evaluation process. At Step 4, the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

At Step 5 of the sequential evaluation process, the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(g); *Yuckert*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I.  Discussion

This case raises the question of whether, if an ALJ explicitly disagrees with an agency nonexamining consultant's omission of a limitation on the basis that it is at odds with the same evidence available to the consultant, and then impermissibly construes raw medical evidence to fill the void, the error is harmless because the limitation is more favorable to the claimant than the

3

record would otherwise support. In accordance with *Staples v. Berryhill* ("*Lisa Staples*"), No. 1:16-cv-00091-GZS, 2017 WL 1011426 (D. Me. Mar. 15, 2017) (rec. dec., *aff'd* Mar. 30, 2017), and its progeny, I conclude that it is not.

In summarizing the record before her, the ALJ noted, in relevant part, that:

1. The plaintiff complained to treating neurologist Christine Lu-Emerson, M.D., on September 12, 2016, "of tingling in her hands and that her right hand was weaker[,]" at which time Dr. Emerson diagnosed right CTS and indicated that additional testing would be done. Record at 22.

2. Dr. Emerson noted on September 15, 2017, that the plaintiff was complaining of CTS symptoms in her left wrist and was dropping things with her right hand. *Id*.

3. Orthopedic surgeon Peter E. Guay, D.O., noted on February 23, 2018, that the plaintiff had undergone right carpal tunnel release surgery 16 days earlier, initially had some issues with overusing her right upper extremity following the procedure, had "gentle full range of motion" on examination, and "could engage in normal activities, but needed to avoid aggressive use of her right hand." *Id*. at 22-23.

4. Stephen Hull, M.D., a specialist in physical medicine and rehabilitation, indicated on April 4, 2019, that the plaintiff's left-sided CTS was mild on electro diagnostics. *See id*. at 23.

The ALJ noted that, on November 20, 2017, and April 20, 2018, respectively, agency nonexamining consultants Robert Hayes, D.O., and Donald Trumbull, M.D., had assessed the plaintiff's physical RFC, with both indicating that the plaintiff could occasionally lift and/or carry 20 pounds, could never climb ladders, ropes, or scaffolds, had no limitations in balancing, could occasionally perform all other postural movements, and needed to avoid concentrated exposure to hazards. *See id*. at 25.

She explained that she found the Hayes and Trumbull opinions "generally persuasive" with respect to the plaintiff's exertional limitations, most postural limitations, and hazard limitations, "as they are consistent with the medical evidence of record." *Id*.  However, she stated, "Dr. Hayes and Dr. Trumbull did not include any manipulative limitations for the [plaintiff], which is unpersuasive, as it is inconsistent with the treatment notes, as the claimant was diagnosed with [CTS] in both hands and had to have surgery on her right hand." *Id*. (citations omitted).

The ALJ included, in her RFC finding, the following limitation not assessed by Dr. Hayes, Dr. Trumbull, or any other medical source: that the plaintiff "can frequently handle with the bilateral hands." Finding 5, *id*. at 19.  She described her RFC determination as supported, *inter alia*, "by medical findings[,]" including those pertaining to CTS.  *Id*. at 26.

As the commissioner concedes, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 17) at 15, the ALJ erroneously construed raw medical evidence to craft a CTS-related limitation, *see, e.g.*, *Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (Although an ALJ is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," she "is not qualified to assess residual functional capacity based on a bare medical record.").  Nonetheless, she contends that the ALJ erred in the plaintiff's favor, precluding remand, a proposition for which she cites *Davis v. Colvin*, No. 1:14-cv-343-JHR, 2015 WL 3937423, at *5 (D. Me. June 25, 2015), *Bowden v. Colvin*, No. 1:13-CV-201-GZS, 2014 WL 1664961, at *4 (D. Me. Apr. 25, 2014), and *Gonsalves v. Astrue*, Civil No. 09-191-BW, 2010 WL 1935753, at *6 (D. Me. May 2010) (rec. dec., *aff'd* June 16, 2010).  *See id*.

The commissioner reasons that, because Dr. Trumbull had the benefit of review of records reflecting the plaintiff's CTS diagnoses in January 2017 and November 2017 and right carpal

tunnel release surgery in February 2018, the ALJ's assessment of any CTS-related limitation necessarily was more favorable than the evidence otherwise supported. *See id.* Therefore, she asserts, to agree with the plaintiff's contention would require this court "to engage in precisely the interpretation of raw medical data . . . that the [claimant] correctly argues, in the same document, is forbidden by Social Security law." *Id.* (quoting *Becky K. G. v. Saul*, No. 1:20-cv-00089-GZS, 2020 WL 7418974, at *6 (D. Me. Dec. 17, 2020) (rec. dec., *aff'd* Jan. 7, 2021) (internal punctuation omitted)).

At oral argument, the plaintiff's counsel countered that this court has made clear that when, as here, an ALJ rejects an agency nonexamining consultant's opinion as insufficiently restrictive and fills the gap by impermissibly interpreting raw medical data, she has not assessed an RFC more favorable than the record would otherwise support, a proposition for which he cited, *inter alia*, *Norman T. v. Berryhill*, No. 1:17-cv-00323-GZS, 2018 WL 3105778 (D. Me. June 24, 2018) (rec. dec., *aff'd* Aug. 6, 2018). He reasoned that, while the ALJ correctly recognized a need for functional limitations related to the plaintiff's CTS, nothing in the record suggested a need for a limitation solely to frequent handling, with no limitations in fingering or feeling, for example.

The plaintiff has the better argument.

In *Lisa Staples*, this court rejected the commissioner's argument that an ALJ had assessed limitations more favorable than the remaining evidence would support, rendering the ALJ's error in construing raw medical evidence harmless, when the ALJ explained that she had given agency nonexamining consultants' opinions little weight because evidence unseen by them demonstrated that the plaintiff had moderate mental limitations. *See Lisa Staples*, 2017 WL 1011426, at *5. The court reasoned that this was "effectively a concession that [the consultants'] opinions could not stand as substantial evidence of [the claimant's] mental RFC." *Id.* (citations omitted). "Thus,

6

instead of assessing a mental RFC that gave the plaintiff 'the benefit of the doubt' or otherwise was more favorable than the remaining evidence would support, the [ALJ] . . . assessed an RFC unsupported by substantial evidence." *Id*. (citation omitted).

The same is true here. While, in this case, the ALJ faulted the agency nonexamining consultants' failure to assess manipulative limitations to account for the plaintiff's CTS on the basis of her review of the same record evidence available to at least one of those consultants, Dr. Trumbull, she effectively found, like the ALJ in *Lisa Staples*, that the consultants' opinions on that point could not stand as substantial evidence. Thus, as in *Lisa Staples*, the ALJ herself judged the relevant portion of the consultants' opinions a nullity, as a result of which her assessment was not more favorable to the plaintiff than the record would otherwise support.

Indeed, in *Norman T.*, citing *Lisa Staples*, this court rejected the commissioner's argument that an ALJ had assessed mental restrictions more favorable to the claimant than the record would otherwise support when the ALJ had deemed agency nonexamining consultants' opinions insufficiently restrictive, rather than undermined by later-submitted evidence as in *Lisa Staples*. *See Norman T.*, 2018 WL 3105778, at *6 ("While the ALJ's RFC finding regarding the [claimant]'s off-task limitations is indeed more favorable than those of the agency nonexamining consultants . . ., the ALJ rejected their conclusions regarding the impact of the [claimant]'s cognitive limitations.").

Similarly, in *Geoffrion v. Berryhill*, No. 2:16-cv-00596-JAW, 2017 WL 5665556 (D. Me. Nov. 26, 2017) (rec. dec., *aff'd* Dec. 18, 2017), an ALJ rejected agency nonexamining consultants' less restrictive opinions pertaining to the claimant's mental impairments as of a remote date last insured not because evidence was unseen by them but, rather, because the ALJ chose to "incorporate[] limitations supported by objective treatment records from the remote period at

7

issue." *Geoffrion*, 2017 WL 5665556, at *4 (citation and internal quotation marks omitted). Citing *Lisa Staples*, this court concluded that, "in so doing, the ALJ in effect conceded that [those] opinions could not stand as substantial evidence of the [claimant]'s mental RFC" and, therefore, rather than assessing a mental RFC "more favorable than the remaining evidence would support, . . . assessed an RFC unsupported by substantial evidence." *Id*. (citations and internal quotation marks omitted).

The same is true in this case.

In arguing that the result should be otherwise, the commissioner relies on caselaw that predates *Lisa Staples* and is distinguishable.

*Davis* is distinguishable in that, there, the ALJ expressly stated that he had given the claimant the benefit of the doubt in assessing physical limitations although no medical practitioner of record had expressed an opinion regarding her physical functional capacity. *See Davis*, 2015 WL 3937423, at *4. In this case, by contrast, the ALJ deemed the opinions of Drs. Hayes and Trumbull unpersuasive and inconsistent with the record evidence insofar as they omitted to assess any manipulative limitations. *See* Record at 25.

*Bowden* is distinguishable in that, there, the ALJ relied on the claimant's own statements. *See Bowden*, 2014 WL 1664961, at *4 (agreeing with the commissioner that "what medical evidence of COPD there is in the record demonstrates that it was minimal, so that the [ALJ] could rely on the [claimant]'s own testimony about the limitations imposed by that impairment") (citations omitted). In this case, by contrast, as the commissioner concedes, the ALJ erred in construing raw medical evidence to devise the manipulative limitation at issue. *See* Opposition at 15.

*Gonsalves* is distinguishable in that, there, inasmuch as appears, the ALJ did not expressly disclaim reliance on any less restrictive opinion in assessing greater limitations. *See Gonsalves*, 2010 WL 1935753, at *6. In those circumstances, the court held that, while it was "true that the [ALJ]'s opinion does not provide any analysis of medical evidence to support a limitation to light work prior to March 30, 2006, . . . that error can only be read, given the state of the record, to be favorable to the [claimant], assigning him a more restricted residual physical capacity than, as the [claimant] himself points out, is justified by the medical evidence." *Id*. at *6. In this case, by contrast, the ALJ pointedly deemed the Hayes and Trumbull opinions unpersuasive and inconsistent with the underlying medical record to the extent that they omitted to assess any manipulative limitation stemming from the plaintiff's CTS. *See* Record at 25.

*Becky K. G.*, the final case cited by the commissioner in opposition to remand, *see* Opposition at 15, also is distinguishable. *In Becky K. G.*, this court concluded that agreeing with the claimant would require the court itself to engage in interpreting raw medical data because the claimant had cited "throughout her brief . . . to medical evidence that she contend[ed] support[ed] an earlier finding of disability." *Becky K. G.*, 2020 WL 7418974 at *6. In this case, by contrast, the plaintiff argues that remand is required because the ALJ herself expressly disclaimed any reliance on the Trumbull and Hayes opinions, as a result of which her RFC finding was not more favorable to the plaintiff than the record evidence would otherwise support. No interpretation of raw medical data by the court is required.

Because the ALJ concededly erred in impermissibly construing raw medical evidence to arrive at a component of the plaintiff's RFC, and, contrary to the commissioner's argument, her error is not rendered harmless on the basis that her finding was more favorable to the plaintiff than the record would otherwise support, remand is required.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 5th day of September, 2021.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge